23-1074 United States v. Lesh. Mr. Samp, you may proceed. Good morning. My name is Richard Samp. I am here representing the appellant David Lesh. I'd like to reserve two minutes for rebuttal. Mr. Lesh is appealing his conviction for violating two Forest Service regulations. There are five separate reasons why the conviction must be overturned. First, the government's evidence is insufficient to sustain either conviction. On count one, there is no... That's me. $50 fine, sorry. There is no evidence under count one that the government ever posted the requisite snowmobiling map prior to the incident in question here. Can I ask you to clarify your argument on that point? And I know you have four other reasons, but is your argument challenging the magistrate judge's... the correctness of the magistrate judge's decision to take judicial notice? Not in the sense that it's improper to take judicial notice of official maps. Of an undated map. Right. Undated or dated. Undated, so there's no challenge to the... What we challenge is that what he provided doesn't provide the requisite evidence. Even assuming it was properly taken judicial notice. Right. All this map shows is that he was able, through his own research and without giving any notice to the parties, to discover that as of late 2021, there was a map in evidence. But this case concerns events in April of 2020, and there is no evidence whatsoever that as of that date, a map had been posted. And you have preserved that argument because how? Because at the trial, we preserved it by raising that issue as our principal defense on the motion for a judgment of acquittal. After the trial, in closing arguments, we raised the argument. In our district court brief, we raised the argument. It was very clear to the district court that we raised the argument and to prosecutors, because the prosecutor responded to that argument in his brief. And by that argument, you mean whether the map, the undated map, could satisfy that element? No. The question in the case is whether there was evidence that a map existed. And what we argued was there was no such evidence. And in response, the district judge recognized that that encompassed the argument about the map of which the magistrate took judicial notice, because the judge specifically said that, yes, there was evidence because the map provided the necessary evidence and that was properly admitted to evidence. And then, of course, we, again, and that issue was ruled on by the district judge. So even if we hadn't raised it, which we did, the fact that the district judge ruled on the issue means that the issue is preserved for this court. A reasonable person would have known, you know, here going through the ropes, burrowing through snow to get into the terrain park. Wouldn't a reasonable person know that that's a trespass under? Yes. And I think there's no question that, first of all, under the enabling statute, the Department of Agriculture has the right to adopt a regulation that prohibits trespassing. And secondly, there was probably sufficient evidence at trial to convict my client of trespassing. But that's not the charge he faces. And in fact, he would never have faced such a charge because the evidence at trial was that there are trespassers on this property every day. And when they are discovered, they are asked politely to leave. And if they do, there's nothing further occurs. The reason the criminal case was brought here was because they wanted to argue that snowmobiling was specifically prohibited by a map on the date of the snowmobiling here. And there simply was no such evidence. Our second point is that on count two, there is no evidence that any consideration was given to Mr. Lesch for his activities on National Forest Service land. And that is the requirement under Section 26110C. That was the requirement imposed by the Strong decision. And the Strong decision was adopted by this court in the Brown decision. And the government wants to change that. They say, oh, really, Brown overruled Strong. But in fact, Brown adopted Strong. And what it says is you have to have some sort of evidence of consideration. It doesn't actually have to be money. For example, in the Brown case, the consideration consisted of the client provided a credit card and promised to pay $200. And the snowmobiles were then delivered on National Forest Service land. Maybe could you say that consideration is sufficient to show a work activity but not necessary, not required? No, I think it is required. That's what the Strong case held. I guess the question is, did Mr. Lesch obtain some commercial benefit from what he did? And the government's argument is that he trespassed on Forest Service land, took these photographs, leveraged them onto his Instagram account, increased his followers, and sold more of his apparel line, apparently. I mean, that's not a very unusual chain of circumstances. I think it is unusual. And to show how unusual it is, the government has failed to come up with a single case that's even remotely similar to that. And we've done a similar search and found no such case. If this were true, that you could bring that sort of criminal prosecution, for example, if Jennifer Lawrence were to decide to climb up a mountain, you can be sure that her publicist would print a picture of that. And it's part of the job of a movie star to get lots of publicity and be out there. And I am sure that the fact that she is a well-known figure means that she's more likely to get future jobs in movies. And by the same token, How about if her publicist paid her to go to the top of Keystone and get a photograph? Well, yes. If, in fact, she received compensation for activities on National Forest Service land, that would be sufficient. And in this case, there is no such evidence. The evidence here is that he was not paid. He made no effort to sell his photographs. Instead, he printed them for free on his Instagram account. He has hundreds of thousands of followers on his Instagram account. And maintaining that requires putting lots of interesting pictures up on his account. And the result of being a famous individual is he gets given discounts on ski gears. And so, yes, he knows it's to his long-term advantage. But to say that there is any direct causal relationship between his activities here and increase in sales in any of his multiple companies is simply not the record. So what's the line that you're asking us to draw? Is it consideration, not consideration? Or vagueness? What's the legal rule that you're asking us to adopt? We're asking that the regulation be interpreted as it was in Strong, saying that consideration is required. If the government is correct that somehow we should be repudiating that standard and saying that any sort of potential profit that could be derived, then, yes, we would say there would be a serious void for vagueness problem because it would be impossible for a reasonable person to determine what activity is permitted and what is not. I thought that your argument had to do with the government's inability to satisfy the primary purpose component of commercial activity. Is that not your argument? That certainly is part of it. I mean, there is a definition in the regulations that says... ...or where the primary purpose is the sale of a good or service, regardless of whether it's intended to be. So I just want to make sure I understand your argument. I thought that's where we were in that component. We were evaluating that question. And the difficulty, of course, with that is that primary purpose is in the eyes of the beholder. It wasn't even held by the magistrate. He made no finding whatsoever that it was the primary purpose. And instead, what courts have done is to say, in determining whether it's the primary purpose, we're going to see, was there some sort of money or other consideration? That's what Strong held. That's what Bartels held. And that is an understandable standard that would allow a reasonable person to figure out what he did or didn't do is prohibited by Section 261. I'm not sure I follow how the understanding of primary purpose helps you, because there was evidence in this case that profits increased under the photo. No, there is not. The only evidence about profits increasing was the statement he made that another photo that was Photoshopped, that was not taken on National Forest Service lands, but which, in fact, he initially was charged criminally for until the government had to admit it and made a mistake. So the keystone photo, no profits. There is no evidence of that whatsoever. And the idea that one particular Instagram posting out of the thousands that Mr. Lesch makes would make a significant difference. The more hate he got, the larger his customers. And so even though it's one, I mean, it's part of his business model. Why doesn't, you know, attracting attention or controversy, you know, increase the sales potential? Why isn't, you know, what's wrong with that? Well, Jennifer Lawrence's publicity when she climbs a mountain and takes a picture, that certainly increases her ability to get films made. But that sort of highly attenuated causal relationship. But you just told me that if her publicist paid her to do it, that that would be satisfied the regulation. Oh, sure. If if she received compensation, that is that would be a form of consideration. But the evidence here is that there was no consideration. And furthermore, we this brings me to my next arguments. And the reason why my organization got involved in this case, it raises serious First Amendment problems to say that activities, which clearly would not have been chargeable if all he had ever done was to snowmobile and to take pictures of it, that by itself, nobody would argue is commercial. What makes it arguably commercial is that he later posted the pictures for free on his Instagram account. If what you're saying is that that that speech is what makes it a crime, we contend that that's a serious First Amendment problem because the result is that that the the action that he is being charged with is his speech. And it is content based. What if he had posted it on his business account? What if he had posted it on his this was on his personal account? What if it was on the apparel account? Well, it certainly would make the causal relationship closer. The fact that it wasn't on his business account, the fact that he wasn't wearing any sort of vertical apparel or doing anything to directly suggest that, watch me, watch me ski. And by the way, please buy my apparel. It just shows how remote the causal relationship is in this case. And I just want before I leave and ask for two minutes of rebuttal, just let me mention that we think there is a serious Sixth Amendment problem here. Obviously, the Supreme Court has ruled on that issue. You are bound by that decision. But I would ask that you look very carefully at the materials that we have cited and to potentially, in your opinion, to suggest that while you are bound by the Supreme Court's decision in Lewis, that you issue some sort of jubilante opinion that indicates your skepticism about that ruling. I'd like to reserve the remainder of my time. You may. May it please the court, I'm Kyle Brenton for the United States. David Lesh told The New Yorker that posting photographs of himself on his personal Instagram account, doing provocative things on National Forest System lands, allowed him to solidify his customer base and reach a whole new audience. And that after posting the second such photo, his sales went up 30 percent. Now, to stage the first of those photos, he jumped his snowmobile off a feature in the Keystone Terrain Park, which was closed to snowmobiles and the entire resort was closed for COVID. Now, this evidence was sufficient to convict Mr. Lesh on both of these counts. Turning first to count one, Your Honor, I think we have very significant waiver issues, as I think the court's questions have made clear. I think that Mr. Lesh has made a couple of specific arguments about the map that the magistrate judge took judicial notice of. And I think Judge Roshman's questions go directly to this. I really see two arguments that he's making on appeal. One is a sufficiency of the evidence argument about the lack of a date on the map. And he's saying, well, regardless of whether it was proper to take notice of the map or not, the map doesn't have a date, so it doesn't tell us that it had been posted when he performed these actions. So it's insufficient. The other argument is the judicial notice argument, whether it was appropriate. Before you go on, it seems there's a predicate argument that he made in front of Judge Gallagher, which is there was no map at all presented by the government. That's absolutely correct, Your Honor. Before we even get to the date, the reason, if I understand correctly, the reason that there was insufficient evidence on that element was because you presented evidence of trespass, not evidence in support of what the regulation would ordinarily require you to prove that element. Certainly, Your Honor. And he certainly, there's no question from the outset, he argued a map is a required element of this offense. And we don't contend otherwise. But the argument that he is making on appeal is different. Both of the arguments he's making on appeal are different. These arguments are both specifically about the map that the magistrate judge took judicial notice of. Now, in his briefing to the district court, that map was utterly ignored. There is not one mention of that map in his opening brief to the district court. Well, there was a mention of it by Judge Domenico, wasn't there? Judge Domenico concluded that Judge Gallagher properly took judicial notice of the map. Yes, Your Honor, and those four words, properly took judicial notice, are the sum total of Judge Domenico's discussion of this issue. It's a description of what the magistrate judge did. It's not an analysis of the question of the propriety of taking judicial notice. Doesn't it suggest that the district court understood the argument and resolved it? No, absolutely not. There's no, in that brief discussion of the arguments on count one, there's no discussion in Judge Domenico's order about, for example, is this a fact capable of ready determination? Is it appropriate to take, does the map have to be dated? None of the issues that he's asking this court to rule based on, on the sufficiency point or the judicial notice point, were made to Judge Domenico. And, you know, four words from the district court, simply recounting what the magistrate judge did, is not sufficient to save a party from their own waiver of an issue that was clearly there to be made. I mean, the magistrate judge took judicial notice of the map in the conviction order. The district court appeal completely ignored it. So you're saying that the argument made in the district court in front of Judge Gallagher was evidence insufficient, no map. And that is the only argument we have that's preserved on appeal. Is that your position? That now we're evaluating the argument as, well, the objection was there was no map. Now there is a map. That's correct, Your Honor. I mean, the argument preserved before the magistrate judge was a map is required. Do you think there's any problem with a trial court after trial satisfying the government's burden of proof for it? Well, first, Your Honor, I don't agree with Mr. Lesh that providing the posted map was an element of this offense. So I disagree with the predicate of that question. I think to the extent that is an issue, I think that that would be an issue that the defendant would need to bring to the court's attention. And he certainly has cited no case that it is inappropriate for a court to take judicial notice on an element that the prosecution has the burden of proof on. And in fact, it's not in the briefs, obviously, but there is a line of case law. And I'll point the court to United States v. Williams, which is 442 Federal 3rd 1259, which is a case about the nature of a prior state conviction in which the court said, you know, sometimes we can do that with things like legislative facts, things like status facts, that sometimes that's OK. But again, I think that's Lesh's burden. Yeah, the key is sometimes, Your Honor. But I think that if he wanted to argue that that was reversible error, it was his burden to do so. So I think that largely deals with the map. To the extent the court, certainly judicial notice is not preserved. To the extent the court wants to talk about sufficiency and date, I think we're on a sufficiency standard, which is could any rational trier of fact have reached the conclusion that the magistrate judge did? And here, the magistrate judge looked at an official government map that was available online as of October of 2021. The question then, is it irrational to infer that that same map was available in April of 2020, when the regulation requiring the designation and the map to be posted was promulgated in 2015, when the testimony at trial was that the terrain park was not designed for snowmobiles to be operated in, and where, as Judge Timkovich pointed out, there is ample notice that there's actual notice to the defendant that this area was closed to snowmobiles. So we would submit that it is a reasonable inference, or at least not an irrational inference, for the court to assume that that map, to infer that that map was also posted in April of 2020. So let's, I'll turn to count two, which is the conviction for conducting work activity. Now, we've had a lot of discussion about what the appropriate standard is, and we submit that the standard is from this court's decision in Brown. It's the only published Tenth Circuit decision addressing this issue. And what the court said in Brown is that it is activity conducted, commercial activity, which is to say activity motivated by the prospect of commercial gain. Now, we have some discussion of the Strong case from the Ninth Circuit. Now, obviously, the Brown court did- Before you move on to Strong- Absolutely. What is the government's position on what our definition of commercial activity is? Doesn't it come from the regulation? The Forest Service regulations define commercial user activity. Your Honor, section 261.2 defines commercial user activity. Yes, that is correct. The violation here, though, was under 261.10c, which is not specific. I don't think that the term in 261.10c is commercial user activity. It's not. It is any kind of work activity or service. I think that the definition of commercial user activity in 261.2 is instructive. I think particularly the portion at the end about whether it's intended to earn a profit is instructive in the work activity analysis, but I don't think that it is exhaustive. So work activity or service would be broader than the commercial definition in 261.2? Yes, I think it absolutely can be broader than that, Your Honor. Well, it's pretty broad. If you believe in slippery slopes, I guess a bad pun with the ski area, but there's a lot of slipperiness here to this prosecution, and the hypotheticals are almost endless about what the government thinks a crime would be on Forest Service land. Jennifer Lawrence was one example. An influencer goes to the top of the ski lift and gets a photo with a brand of clothing. Is that a crime? Did John Filder commit a crime every time he took photographs on our national parks and forest lands? The Patagonia CEO with Patagonia gear at the resort. I mean, are all those potentially criminal acts? Well, no, Your Honor. Good, good. Tell me why. Well, I think because the evidence here between the activity performed on the land and Mr. Lesh's commercial motivation, the evidence that showed his commercial motivation was much stronger than any of these hypotheticals, and in fact, much more direct. So both the magistrate judge and the district court recognized that these three photographs, the Keystone photo in April of 2020, the Hanging Lake photo in June of 2020, and the Maroon Lake photo in October of 2020. The examples I gave are no less powerful on the potential commercial benefit or gain. You know, I think John Filder would be committing a crime because, you know, he's making millions of dollars selling these photographs. Well, Your Honor, I think, first of all, I think that there's... In fact, it's more direct than Mr. Lesh's situation. I think that there is a significant difference between just the photography example. There are obviously separate regulations addressing still photography. This case, though, involves the use of these lands to drive attention to his brand, and that's even more nebulous than, you know, putting an easel out and painting the landscape. I mean, those seem pretty direct to me, and I guess you're saying they need... There's other regulations that might cover it, but it seems like this regulation makes those activities criminal. Well, Your Honor, I think we're also engaging in a pretty significant assumption that John Filder never got a special use permit. I'll spot you that, but I don't think that, you know... You can imagine another hypothetical. It's somebody less famous or has less of an entourage than John Filder. Well, but I think that that is a significant difference, though, Your Honor, because these regulations don't prohibit conducting these activities. They don't prohibit doing those things. They prohibit doing those things without getting a permit. And if an individual, a photographer, a professional photographer, even one significantly less well-known than John Filder, wants to go on forest system lands and take photographs to sell for profit, all they have to do is get a special use permit. Okay, well, it's a notice question, then. And, you know, my Patagonia CEO, Jennifer Lawrence, does the reasonable person know that an Instagram photo on forest service land is a crime? I don't think an Instagram photo on forest service land is a crime, Your Honor. I think that that significantly overstates the issue here. If it's linked somehow to a work activity or service. But I think that the work activity or service evidence here is just significantly stronger than any sort of attenuated, the more followers I get, the better I do in my career. Can you be really specific about what your definition is? Because if it's not, Brown tells us the key is whether the sale or offer of sale of merchandise or the work activity or service is a commercial activity. Yes. And then we have the definition in 261.2, but you're saying the government isn't relying on that definition. That definition is narrower. So what is the working definition for commercial activity for purposes of the regulation at review here? Absolutely, Your Honor. It's what Brown says a little further down in that paragraph, which is activity that is motivated by the prospect of commercial gain. And obviously the definition of commercial use in 261.2 is relevant, but I think that work activity is broader than commercial use. And the definition that we would propose the court adopt, or that the court did adopt, frankly, in Brown, is conduct that is motivated by the prospect of commercial gain. And so what precisely here is the evidence that goes to that definition? The evidence is what he told the New Yorker, what I said at the very beginning of my presentation. He also told the New Yorker, well, I mean, the New Yorker said he also said, you know, he wanted to poke the bear, which just is being provocative. It's not necessarily selling stuff. But those two things, Your Honor, are inextricably intertwined for Mr. Lesh. What he said was, when I posted this, when I get a misdemeanor in a parade, pardon me, when I get a misdemeanor in a terrain park, everybody goes crazy, and I get so much more attention. He says, the more hate I got, the more people got behind me. It was an opportunity to reach a whole new group of people while really solidifying the customer base we already had. So he himself has tied together provocation, poking the bear, as you say, Your Honor, with his own commercial success. And then he says that after posting the second photo, the Hanging Lake photo, his annual sales went up 30%. But is that photo, the Hanging Lake photo, fair game for evaluating his conviction? It's absolutely fair game for evaluating his conviction on count two, because as the magistrate judge and the district court understood, it was taken into account as evidence of his motivation. And this is not one photo. This is a series of three photos that both the magistrate judge and the district court recognized as part of a campaign, a campaign to gain attention and sales. Would the conviction have been improper if the evidence showed no increase in his Instagram followers? No, absolutely not, Your Honor. It's a question of his motivation. What is his motivation when he conducted the activity on the land? So even if he didn't post on Instagram, he'd committed a crime? If there is evidence showing his commercial motivation, then yes. Because the Instagram post is not the crime. The crime was breaking into the area, operating the snowmobile, and taking pictures of it. The Instagram post shows his motivation. The motivation is relevant to what type of post it was, right? I mean, if he had posted from his business account, how are we supposed to think about the fact that this was on his personal Instagram? Well, I think that the evidence shows that all three of these photos in this campaign were on his personal Instagram. I think that if you read the New Yorker article, all these things are intimately tied together, and that he is driving customer and attention to his business through his personal Instagram. I don't think it's relevant. I don't think it makes any sort of dispositive difference that this was on his personal Instagram versus his company account. Influencers beware. Influencers who are attempting to use National Forest System lands to drive attention to their companies and not getting a permit for it should be where you're at. Get a permit. Get a permit, exactly. We ask the court to affirm. Thank you. Your Honor, it's irrebuttable that the government submitted insufficient evidence at trial on count one. And now the government is trying to argue that, well, maybe the statute didn't really require a map. And I ask you to read the language of 261.14, which says that the prohibition on snowmobiling only kicks in after the map has been posted. And I think that is absolutely clear. I would like to read what we said from the district court brief, and I think it makes it very clear that we did raise the issue of the adequacy of the evidence. Quote, the government entirely fails to prove an element of the offense. According to 261.14, the public must be informed of designations via over-snow vehicle use map available at the headquarters and on the web. Here the government submitted no evidence that the designation had been publicized in any form. So regardless of whether or not it took issue with the judicial notice, which we don't take issue with today, we just take issue with the adequacy of that evidence. If you read that material, which is on page 91 of the joint appendix, it makes it absolutely clear we raised the issue. It seems you contended that there was no evidence, and then the absence of evidence and the adequacy of evidence seemed to me like different things. It seems like to Judge Gallagher you were arguing there is no map, so government can't satisfy the element. And then later you were arguing something else. No, we've always argued that there was not adequate evidence, and the judicial notice failed to provide that adequate evidence. It was not evidence at all that the map had been posted two years before this map was located. And I just, again, finally on the case of Brown, I agree Brown is controlling the circuit. Brown cites to the controlling standard of Strong. Strong says that the way we decide what is commercial activity is, was their consideration. That is the controlling precedent in this circuit, and there absolutely was no consideration. Thank you very much. Thank you, counsel. Counselor excused, and the case is submitted. I appreciate your arguments this morning.